UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Loretta Bitner** <br> 33196 Mariners Avenue <br> Millsboro, Delaware 19966 <br><br> *Plaintiff*, <br><br> v. <br><br> **Pete Buttigieg, Secretary,** <br> **U.S. Department of Transportation** <br> 1200 New Jersey Ave. S.E. <br> Washington, D.C. 20590 <br><br> *Defendant*. | Case No.: _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Loretta Bitner ("Plaintiff" or "Ms. Bitner"), by and through her undersigned counsel, Raymond C. Fay, Esq. and Dionna Maria Lewis, Esq. complains against Defendant, Pete Buttigieg, Secretary, U.S. Department of Transportation (hereinafter "Defendant," "DoT" or "Agency") and in support thereof states as follows:

### INTRODUCTION

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and 42 U.S.C. § 1981a for the Defendant's unlawful harassment and discrimination based on sex (female).

### JURISDICTION AND VENUE

1

2. This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 2000e-16(c) because the unlawful employment practices alleged in this complaint occurred in the District of Columbia.

3. Venue for this action is predicated upon 28 U.S.C. § 1391(b) and (c). The Agency U.S. Department of Transportation is headquartered within the District of Columbia and is thus deemed to reside within this judicial district, and subject to the court's personal jurisdiction with respect to this civil action. Further, the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia. Accordingly, venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) and (c).

## EXHAUSTION OF REMEDIES

4. Plaintiff has exhausted all of her administrative remedies.

5. Plaintiff filed a charge with the DoT on February 18, 2020, alleging discrimination based on sex (female) due to non-selection.

6. In July 2021, a Report of Investigation was issued to Plaintiff. Since then, the agency has not issued a final decision and no appeal has been filed.

7. Accordingly, Plaintiff timely files this action pursuant to 42 U.S.C. § 2000e-16(c) given that 180 days have passed from the day Plaintiff filed her charge of discrimination and the agency has not issued a final decision nor has an appeal been filed.

## PARTIES

8. Plaintiff Loretta Bitner is a woman who resides in Delaware, where she currently teleworks for the Federal Motor Carrier Safety Administration ("FMCSA"), an agency of Defendant in the District of Columbia.

9. Defendant is a United States agency, which is headquartered in the District of Columbia.

10. During the relevant period, the Defendant Agency employed Plaintiff Ms. Bitner.

11. During the relevant period, Plaintiff was Defendant's employee within the meaning, and entitled to the protections of Title VII.

## FACTUAL ALLEGATIONS

12. Plaintiff, Loretta Bitner, has been employed by the Defendant, the Department of Transportation ("DoT"), since 2009 as the Supervisory Transportation Specialist/Chief, GS-2101-15, within the FMCSA Office of Enforcement and Compliance. Prior to that, Plaintiff was the Chief of Commercial Enforcement since 2006.

13. In the course of her employment with Defendant Agency, Plaintiff has applied for three Senior Executive Service (SES) positions within FMCSA: Director of the Office of Registration and Safety Information; Director of Office of State Programs; and Regional Field Administrator for the Eastern Region. Each time, Plaintiff was one of two final candidates, one male and one female. All three times, the male candidate was selected. Plaintiff's most recent experience confirmed that the selections were discriminatory against women in Senior Leadership at FMCSA.

14. In or around May 2019, Plaintiff applied for Regional Field Administrator for the Eastern Region (RFA) at the Federal Motor Carrier Safety Administration (FMCSA). This position is a part of FMCSA's Senior Leadership in the SES. Plaintiff was qualified for the position due to her experience leading national initiatives and establishing organizational vision; leading national programs, resources, teams and associations. Further, Plaintiff had experience leading the Eastern Region on a detailed assignment as well as her twenty-six years' experience in motor carrier safety from federal, state, and industry perspectives.

15. As part of the application process, Plaintiff was interviewed for the RFA by two panels consisting of three persons each and a one-on-one interview with the FMCSA Administrator, Mr. Raymond Martinez.

16. The first interview was on June 6, 2019. The panel members were Mr. Jack Schreibman, Associate Administrator for Administration at FMCSA; Mr. Darin Jones, Regional Field Administrator, Midwest Region at FMCSA; and a female SES from the Volpe Center. Four individuals were interviewed.

17. The second interview occurred on July 17, 2019. The panel members were Mr. John Van Steenburg, Chief Safety Officer at FMCSA; Mr. Larry Minor, Associate Administrator for Policy at FMCSA; and a female SES from the International Office in the Office of the Secretary. There were two remaining candidates for the position, Plaintiff and a male candidate.

18. The third and final interview was scheduled for thirty (30) minutes with Mr. Martinez on July 22, 2019 in his office. From the outset, Mr. Martinez was clearly not prepared for the interview and had to ask his Administrative Assistant if there was a file for the meeting.

19. After the file was found, Mr. Martinez glanced through it for a few seconds and then began asking Plaintiff questions. The initial questions were about the process leading up to this the final interview. Mr. Martinez indicated that he did not know the hiring process so Plaintiff told him about filing the application and described both interview panels. Mr. Martinez then made a comment about how he was surprised by the recent response he had gotten when he appointed Mr. Bruce Edwards as the Acting Chief Financial Officer (CFO) and that he did not understand why people were upset. At the time, Plaintiff knew that Mr. Edwards appointment had made people upset because he had been appointed to an SES

position without the opportunity for others to apply even though at the time, Ms. Siobhan Crawford was the Deputy CFO.

20. The interview proceeded and Plaintiff and Mr. Martinez discussed the commercial driver licensing (CDL) issues in Massachusetts and his concerns. Plaintiff took this opportunity to provide information about her experience leading CDL programs and initiatives. In response, Mr. Martinez made a comment that he was unaware of Plaintiff's background related to CDL programs. Based on Mr. Martinez's comment, Plaintiff began to describe several other aspects of her motor carrier safety experience. Again, Mr. Martinez commented that he had no idea Plaintiff had done so many things. Plaintiff proceeded to discuss the increase in commercial motor vehicle deaths and shared her ideas of how to address the issue. It was at that time that Mr. Martinez indicated their allotted time was over and ended the meeting.

21. Plaintiff left the meeting feeling that Mr. Martinez had done little, if anything, in preparation for Plaintiff's interview and there was no real interest in her knowledge, experience, leadership abilities or what she could do as the RFA. All the experience and knowledge that Mr. Martinez said he was unaware of were well-documented in Plaintiff's application and resume. It was painfully apparent to Plaintiff that the interview was simply to "check the box" and that Mr. Martinez had met with Plaintiff so that he could move forward with hiring the other candidate.

22. After her interview, Plaintiff learned that Mr. Martinez was holding interviews with male candidates for other RFA positions over lunch even though her interview was a rushed 20-30 minutes in his office.

23. In or around August and September 2019, Plaintiff asked both the OST personnel and FMCSA's Human Resources personnel if there was a selection for the RFA position. The response each time was that it was still in the process.

24. Sometime later, Plaintiff received a phone call from the Administrator's Administrative Assistant asking if Plaintiff was available for a phone call with Mr. Martinez on October 1, 2019 at 1:00 pm. Plaintiff confirmed but was not told the topic for the call.

25. Mr. Martinez called Plaintiff at the appointed time and told Plaintiff that the recommendation from the interview panels was mixed, and that although Plaintiff was highly qualified for the job, he had decided on the other applicant as the next RFA. Plaintiff thanked Mr. Martinez and requested to see the panel recommendations. Mr. Martinez confirmed that he would supply the information, but Plaintiff never received the documents.

26. After the call, Plaintiff contacted the references on her application and none of them had been called at any time during the process. This reaffirmed Plaintiff's belief that interviewing her was done as a formality and that she was never truly considered for the RFA position despite being highly qualified for it.

27. As of November 2019, there were 22 SES, Senior Level (SL) and/or Scientific or Professional (ST) positions at FMCSA. Most are career positions and five are political appointments. Of these 22 positions, 17 were held by men, 2 by women, and 3 were vacant. Further, as Senior positions are vacated, most of the backfills are male as illustrated by the following examples:

- Administrator Ms. Anne Ferro replaced by Mr. Scott Darling, then Mr. Raymond Martinez and currently acting is Mr. James Mullen (non-career).

- Deputy Administrator Ms. Daphne Jefferson replaced by Ms. Cathy Gautreaux, then Mr. Alan Hanson and Mr. James Mullen (Ms. Jefferson was career but this is usually noncareer).

- Chief Safety Officer/ Assistant Administrator Ms. Rose McMurray replaced by Mr. John Van Steenburg.

- Chief Financial Officer Ms. Kathleen O' Sullivan replaced.by Ms. Pamela Reed and then Mr. Leonard Bechtel.

- Regional Field Administrator, Western Region Mr. William Paden replaced by Mr. Scott Hernandez.

- Associate Administrator for Policy Ms. Rose McMurray replaced by Mr. Larry Minor.

- Office Director for Safety Programs Ms. Anna Amos replaced by *Mr. Thomas Keane.

- Office Director for Enforcement Mr. John Van Steenburg replaced by Mr. Joseph DeLorenzo.

- Office Director for Policy, Strategic Planning and Regulations Ms. Pam Pelchovitz replaced by Mr. Robert Miller.

- Associate Administrator for Administration Ms. Daphne Jefferson replaced by Mr. John Kuo, Mr. William Quade (acting) and then Mr. Jack Schreibman.

- Associate Administrator and Chief Information Officer, Research and Information Technology Dr. Kelly Regal, female, was demoted to Associate Administrator Research and Information Technology. The new Chief

- Information Officer Mr. Papp Cisse (acting), was replaced by Mr. Josh Batten and then Mr. Charles Taumeopeau (acting).

- Chief Medical Officer Benisse Lester MD, a female, replaced by Dr. Joseph Sentef, a male.

- Several years ago, a new SES position, Office Director for the Office of Registration and Safety Information was created. The position was filled by *Mr. Steven Dillingham and later by Mr. Kenneth Riddle.

* In each of these positions, the two final candidates were Plaintiff and the selectee.

28. Plaintiff was aware that her experience and years at the agency made her just as, if not more, qualified for any of the three SES positions she had applied to as the other applicants. Further, the RFA position involved matters that Plaintiff had intimate knowledge of and, while the male candidate worked in the Eastern Region, Plaintiff's leadership and topic experience made her equally or better qualified than the male selectee.  It was with this knowledge and prior experience of being passed over for SES positions Plaintiff was eminently qualified for that impelled Plaintiff to file an EEO Complaint.

29. Plaintiff originally contacted an EEO counselor about her Complaint on November 13, 2019.  At that time, Plaintiff spoke with Mr. Kennie May about the process.  Mr. May asked Plaintiff if she would be interested in ADR Mediation.  Plaintiff responded that she was and Mr. May then asked for a few days to assign an EEO Counselor.  However, Plaintiff was not assigned an EEO Counselor almost 30 days later on December 11, 2019.

30. Plaintiff's first meeting with the EEO Counselor was on or about December 12, 2019.  Ms. Marzell Malone was assigned as Plaintiff's EEO Counselor, but informed Plaintiff that she had received none of the documents that Plaintiff had filed with Mr. May or Ms. Carolyn

Butler. Plaintiff made copies for Ms. Malone and sent other documents via email. During this meeting, Ms. Malone asked if Plaintiff was open to ADR Mediation. Plaintiff told Ms. Malone she would consider it and signed an extension of time for EEO Counseling as requested by Ms. Malone.  On or about December 13, 2019, Plaintiff informed Ms. Malone, Ms. Butler and Mr. May that she wanted to participate in ADR Mediation.

31. From on or around, December 13, 2019 to January 8, 2020, Mr. May attempted to find someone in FMCSA Leadership who was willing to participate in ADR Mediation. Plaintiff's understanding was that Mr. May discussed the request with Mr. John Van Steenburg and the Acting Administrator, Mr. Jim Mullen.  Mr. Van Steenburg told Mr. May to have Plaintiff talk with Ms. Jastine Caine.

32. Plaintiff spoke with Ms. Caine, but she could not provide any information beyond the basic interview process. This conversation was conducted without a mediator and was not arranged by Mr. May.

33. On or about January 8, 2020, Mr. May sent Plaintiff an email stating that "the only person who can explain that actions of the former Administrator is the former Administrator," and that he would talk with the Acting Administrator about it, or words to that effect.  Mr. May also stated "In the meantime, we will proceed with the EEO counseling process."

34. On or about January 29 and January 30, 2020, Ms. Malone requested additional information from Plaintiff.  Ms. Malone stated that she was attempting to reach people to discuss Plaintiff's EEO Complaint but that she did not receive any response from FMCSA employees to her multiple requests. Plaintiff received the "Notice of Right to File a Discrimination Complaint" on February 7, 2020.

35. Based on the facts above, Plaintiff was discriminated against when she was consistently passed over for Senior Leadership positions in favor of men over the course or nine (9) years at the Agency and despite her qualifications.

36. As a result of this discrimination, Plaintiff has been gravely impacted with regard to the terms and conditions of her employment, her compensation and benefits, emotional distress, and physical pain and suffering.

## COUNT I

### VIOLATION OF TITLE VII – SEX DISCRIMINATION

37. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

38. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

39. Here, the four (4) elements of a *prima facie* case of sex discrimination are met. The Plaintiff is a woman, and is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964. Additionally, Plaintiff is a qualified member of the DoT where she has worked in some capacity for fifteen (15) years. The Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII while working under Mr. Martinez and senior leadership when she was deliberately passed over for Senior Leadership positions multiple times during her tenure at the Defendant Agency despite her qualifications and her being one of the final two candidates. The above-mentioned actions by the Defendant towards

the Plaintiff demonstrate the discriminatory and prejudicial manner in which the Defendants treated the Plaintiff and her lawful claims against them.

40. Plaintiff is a member of a protected class as a woman.

41. Because of her sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

42. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

43. Defendant knew that Plaintiff was a woman prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sex.

44. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sex.

45. Defendant treated Plaintiff in a way that adversely affected her status as an employee because of her sex.

46. Other employees who were similarly situated, but were male individuals, have been treated more favorably than the Plaintiff with regard to the terms and conditions of employment and workplace conditions.

47. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

48. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

49. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

50. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her sex.

51. Defendant discriminated against Plaintiff because of her sex by engaging in, tolerating, or failing to prevent sex discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

52. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants, and employees while acting within the course and scope of their employment, under the principles of *respondeat superior*.

53. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages – including, but not limited to, past and future loss of income, benefits, career opportunities, medical expenses, and costs – and is entitled to all available legal and equitable remedies.

54. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

55. Further, Defendant's treatment and actions are ongoing.

56. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

57. Similarly, situated male employees were not subjected to the same, similar, or any adverse treatment as Plaintiff.

58. The Defendant Agency must comply with Title VII, but by and through their conduct, have violated Title VII.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ms. Loretta Bitner, respectfully prays that this Court grant her the following relief:

    a.    Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII;

    b.    Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

    c.    Award Plaintiff back pay and benefits in the amount equal to the difference between SES pay and her current pay;

    d. compensatory damages in the amount that would fully compensate Plaintiff for the economic loss, loss of promotional potential, reputation, lost wages, lost job benefits, physical and psychological injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendant alleged herein;

    e.    Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

    f.    Order such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable herein.

Dated: December 1, 2021

/s/
Raymond C. Fay, DC Bar No. 188649
Fay Law Group PLLC
1250 Connecticut Ave NW Ste 1250
Washington, DC 20036
(202) 263-4604 (tel)
rfay@faylawdc.com

/s/
Dionna Maria Lewis, Bar No. 216016
District Legal Group, PLLC
700 Pennsylvania Ave, SE, Suite 2098
Washington, D.C. 20003
Phone: (202) 486-3478
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff Loretta Bitner*