UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LORETTA BITNER**,<br><br>     Plaintiff,<br><br>     v.<br><br>**PETE BUTTIGIEG**, Secretary, U.S. Department of Transportation,<br><br>     Defendant. | Case No. 1:21-cv-3153 (TNM) |

## MEMORANDUM ORDER

  Loretta Bitner brought a sex discrimination suit against Transportation Secretary Pete Buttigieg, claiming that the agency he leads unlawfully picked a man for the job she wanted. Her case went to trial. But after three days of testimony and evidence, the jury rejected her claim and returned a verdict for the Secretary. Now Bitner asks for a new trial. In her view, a jury instruction and two evidentiary rulings entitle her to do-over. They do not. So the Court will deny Bitner's motion.

## I.

  Bitner spent 18 years working at the Federal Motor Carrier Safety Administration ("FMCSA"). Trial Tr. at 92:11–18 (June 4, 2024). Several years ago, the agency posted an opening for a senior-level position: the Regional Field Administrator for the Eastern Service Center. *Id.* at 96:17–18. Bitner applied. *Id.* But the agency ultimately gave the job to Taft Kelly, a man. Trial Tr. at 45:24–46:2 (June 5, 2024).

  Bitner believed the agency denied her the promotion because of her sex. Trial Tr. at 140:6–15 (June 4). So she sued for sex discrimination in violation of Title VII. Compl. ¶¶ 37–

58, ECF No. 1.  Her case went to trial this summer.  For three days, a seven-member jury heard live testimony from ten witnesses and saw dozens of exhibits.  Then the jury deliberated for two-and-a-half hours and returned a verdict for the Secretary.  Trial Tr. at 65:4–5, 77:12–13, 79:2–7 (June 6, 2024); *see also* Verdict Form, ECF No. 53.

Now Bitner moves for a new trial.  Pl.'s Mot. New Trial, ECF No. 58.  Her motion is ripe.

## II.

After a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Traditionally, courts have had "the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice."  *Queen v. Schultz*, 310 F.R.D. 10, 21 (D.D.C. 2015) (quoting 11 Wright & Miller, et al., Federal Practice and Procedure § 2805 (3d ed. 2012)).  Under this standard, "motions for a new trial are granted only when the court is convinced that the jury verdict was a seriously erroneous result and where a denial of the motion will result in a clear miscarriage of justice."  *Id.* (cleaned up).

Legally erroneous jury instructions will entitle a litigant to a new trial, but only if the error "affected the outcome" of the trial.  *Czekalski v. LaHood*, 589 F.3d 449, 453 (D.C. Cir. 2009) (cleaned up).  And "jury instructions are proper if, when viewed as a whole, they fairly present the applicable legal principles and standards."  *Id.* (cleaned up). This means magic words are not required; "as long as a district judge's instructions are legally correct[,] he is not required to give them in any particular language."  *Id.* at 455 (cleaned up).

Evidentiary rulings can also "be a proper basis for an award of a new trial."  *Queen*, 310 F.R.D. at 25.  Yet "the standard for granting a new trial is not whether minor evidentiary errors

were made but whether there was a clear miscarriage of justice." *Id.* (cleaned up); *accord Warren v. Thompson*, 224 F.R.D. 236, 239 (D.D.C. 2004).

Together, these rules create a "high threshold for a new trial." *Queen*, 310 F.R.D. at 21. "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* (quoting *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1287 (2d Cir. 1994)).

Finally, "[t]he authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). And in exercising this discretion, the Court must "be mindful of the jury's special function in our legal system and hesitate to disturb its finding." *Queen*, 310 F.R.D. at 21 (cleaned up).

### III.

Bitner bases her request for a new trial on one jury instruction and two evidentiary rulings. She argues the Court gave a legally erroneous instruction on pretext. And she argues the Court erred when it excluded excerpts from the 2020 Office of Personnel Management Senior Executive Service Desk Guide, as well as statistics on gender demographics within FMCSA's senior ranks. The Court takes each of her arguments in turn.

### A.

First up, the jury instruction. The key inquiry here is whether the Court's pretext instruction, "when viewed as a whole, . . . fairly present[ed] the applicable legal principles and

3

standards." *Czekalski*, 589 F.3d at 453 (cleaned up).  So the Court starts with the law on pretext, then moves to whether the jury instruction fairly conveyed it.

"In a Title VII disparate-treatment suit," there is one "central issue: whether [the plaintiff] produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason *and* that the employer intentionally discriminated against [the plaintiff] based on [her sex]." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494–95 (D.C. Cir. 2008) (emphasis added).  A plaintiff "may try in multiple ways to show that the employer's stated reason for the employment action was not the actual reason (in other words, was a pretext)." *Id.* at 495.  But in addition to proving the employer's reason a sham, the plaintiff must also show "that the real reason was prohibited discrimination." *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015).  Putting it all together, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (cleaned up).

So evidence of discrimination and pretext "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000).  But this still leaves a jury some leeway.  Indeed, a plaintiff's evidence of discrimination and pretext will not "*always* be adequate to sustain a jury's finding of liability." *Id.*  There may "be instances where, although the plaintiff has established a prima facie case and set forth evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*  For instance, a plaintiff might have weak evidence of pretext insufficient to overcome "abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*  A pretextual hiring decision that hides a non-unlawful motivation—for instance, dislike of Yankees fans—is not actionable.

4

The Court's jury instructions fairly conveyed these points of law. Because these instructions must be "viewed as a whole," *Czekalski*, 5879 F.3d at 453 (cleaned up), the Court excerpts the relevant portion here:

> When you consider whether discrimination occurred, you must consider whether the Department of Transportation has given a legitimate, nondiscriminatory reason for not selecting Ms. Bitner.
>
> The law does not require the Department of Transportation to prove by a preponderance of the evidence that its alleged nondiscriminatory reason was the only reason for Ms. Bitner's nonselection.
>
> It always remains Ms. Bitner's burden to prove by a preponderance of the evidence that the Department of Transportation did not select her for the position for an unlawful discriminatory reason because of her gender.
>
> Even if an employer's decision was mistaken, wrong, unjust or insensible, that is not a basis for finding discrimination.
>
> Thus, even if you personally disagree with the selection decision that was made, unless you find that the discrimination was a reason for the selection, then you must return a verdict in the Department of Transportation's favor.
>
> What an employer cannot do is intentionally discriminate against a person because of his or her gender. An employer may make its employment decision as it sees fit as long as that decision is not unlawful. And it is unlawful to discriminate because of gender.
>
> Ms. Bitner has introduced evidence that she contends shows the Department of Transportation's stated reasons for its decision not to select her for the 2019 regional field administrator for the eastern region position are a pretext or excuse for what actually was discrimination because of Ms. Bitner's gender.
>
> If you consider Ms. Bitner's evidence of pretext, remember that the relevant question is whether the Department of Transportation's stated reasons for not selecting her for that position were not the real reasons for its actions. In other words, the question is whether the Department of Transportation honestly believed in the reasons it offered for the selection decision, not whether you agree with those reasons or believe that they were fair.
>
> You are not to consider whether the Department of Transportation's reasons showed poor or incorrect judgment unless they were so wrong as to suggest they were not genuine.
>
> You are also not to consider the Department of Transportation's wisdom in not selecting Ms. Bitner. You may consider, however, whether the Department of

> Transportation's stated reasons for not selecting Ms. Bitner for the position are merely a coverup for the discrimination because of her gender.
>
> When determining whether the Department of Transportation's stated reasons for the nonselection were pretextual, you should carefully evaluate any reasons the Department of Transportation has offered.
>
> You may consider, for instance, whether those reasons are . . . consistent or contradictory; whether the Department of Transportation is making up or lying about the facts that determined the employment decision; whether there is any contemporaneous documentation of the Department of Transportation's reasons or whether the Department of Transportation has treated other employees of a different gender more favorably in similar factual circumstances.
>
> You may also find, but are not required to, that the Department of Transportation's stated reasons are pretextual if you find that Ms. Bitner was significantly better qualified for the 2019 regional field administrator for the eastern region position than Mr. Kelly, so long as the qualification gap is great enough to be inherently indicative of discrimination.
>
> Proof that the Department of Transportation's stated reasons for not selecting Ms. Bitner are pretextual or not credible is one form of circumstantial evidence from which you may infer but do not have to infer that the Department of Transportation intentionally discriminated against Ms. Bitner because of her gender.

Trial Tr. at 24:22–27:21 (June 6).

These instructions accurately convey the law on pretext. They flagged for the jury that Bitner introduced evidence that, in her view, amounted to pretext. *Id.* at 25:22–26:2. But in line with *Brady*, 520 F.3d at 494–95, the instructions admonished the jury to keep its focus on the "relevant question" of whether the Secretary's "stated reasons . . . are merely a coverup for . . . discrimination because of her gender," Trial Tr. at 26:3–20 (June 6). And tracking the standard in *Reeves*, 530 U.S. at 148, the instructions told the jury that it "may infer but [did] not have to infer" intentional discrimination based on Bitner's proof of pretext, Trial Tr. at 27:16–21 (June 6).

Bitner disagrees. She argues that the instructions exhibit three errors: (1) they required her "to show that [the Secretary] was lying," Pl.'s Mot. at 6; (2) they did not inform the jury that

6

pretext may be shown by a "failure to follow established procedures," *id.*; and (3) they said that the Secretary's "business judgment could override a finding of pretext," *id.* None of these arguments are persuasive.

*First*, Bitner misunderstands the law. When an employer in a Title VII case "has asserted a legitimate, non-discriminatory reason for the [employment] decision," the plaintiff must prove that the employer's reason "was not the actual reason and that the employer intentionally discriminated" against her. *Brady*, 520 F.3d at 495. Comparator evidence might help a plaintiff meet her burden—something the Court specifically mentioned in its instructions. *See id.*; Trial Tr. at 26:25–27:8 (June 6). But short of that, the plaintiff usually needs to show "that the employer is *making up or lying* about the underlying facts that formed the predicate for the employment decision." *Brady*, 520 F.3d at 495 (emphasis added). The Court tracked verbatim this binding D.C. Circuit standard in its instructions. *See* Trial Tr. at 27:2–4 (June 6) (telling jury it may consider "whether the Department of Transportation is making up or lying about the facts that determined the employment decision").

*Second*, Bitner says the Court failed "to instruct on the various ways in which pretext might be proved," such as a "failure to follow established procedures in the pre-selection and selection of Kelly as the Regional Field Administrator in the acting and permanent positions." Pl.'s Mot. at 6. But the Court instructed the jury on several ways to smoke out pretext—by examining whether (1) the Secretary's reasons were "consistent or contradictory," (2) the Secretary was "making up or lying about the facts that determined the employment decision," (3) "contemporaneous documentation" supported the Secretary's decision, and (4) the Secretary treated employees of another "gender more favorably in similar factual circumstances." Trial Tr. at 26:25–27:8 (June 6). Beyond these specific examples, the Court repeatedly told the jury to

7

"carefully evaluate any reasons the Department of Transportation has offered," and examine whether its reasons were "merely a coverup" for gender discrimination. *Id.* at 26:15–24.

While the Court did not specifically provide an instruction on the Secretary's adherence to protocols, parties are not entitled to dictate the language of a jury instruction or to have the Court regurgitate their factual claims as statements of law. A reasonable juror would understand that flagrant violations of the hiring protocol may suggest that the Secretary was "making up or lying" about the reason for his decision. *Id.* at 27:2–4. Similarly, a reasonable juror faced with evidence of disparately applied hiring rules may sense that a "coverup" is afoot. *Id.* at 26:15–20. So the Court still gave "legally correct" instructions on pretext. *Czekalski*, 589 F.3d at 455 (cleaned up). And it was not "required to give them in any particular language." *Id.* (cleaned up).

*Third*, Bitner says the instructions told the jury that the Secretary's "business judgment could override a finding of pretext." Pl.'s Mot. at 6. Not so. After explaining that Bitner had the burden to prove discrimination, the Court told the jury that a "mistaken, wrong, [or] unjust" business decision by the Secretary "is not a basis for finding discrimination." Trial Tr. at 25:5–11 (June 6). But the Court never said that the Secretary's business judgment could "immunize" him from liability. Pl.'s Mot. at 6. To the contrary, the Court said that business judgment alone does not warrant liability, "*unless you find that . . . discrimination was a reason for the selection*." Trial Tr. at 25:12–16 (June 6). Then the Court immediately followed up with this clarification: "What an employer cannot do is intentionally discriminate against a person because of his or her gender." *Id.* at 25:17–18.

To sum up, none of Bitner's arguments on the pretext instruction hit the mark—much less do they exhibit a "clear miscarriage of justice." *Queen*, 310 F.R.D. at 21.

**B.**

That leaves the evidentiary rulings.  Bitner challenges two of them:  (1) the exclusion of excerpts from the 2020 OPM Senior Executive Service Desk Guide in favor of excerpts from the 2017 version; and (2) the exclusion of gender demographic statistics on senior positions at FMCSA.  Pl.'s Mot. at 7–11.  Neither decision constitutes legal error, "let alone a clear miscarriage of justice."  *Moore*, 102 F. Supp. 3d at 139.

*First*, the OPM Desk Guide.  Bitner contests the exclusion of the 2020 version of this document, saying "[t]he significance of [this exhibit] to [her] pretext case cannot be overstated."  Pl.'s Mot. at 8.  Bitner specifically wanted to rely on this exhibit to build out her argument on the Secretary's alleged departure from hiring protocols.  The 2020 version of the Desk Guide states that "[d]etails should not be used as a means of providing a specific non-SES employee the opportunity to acquire the qualifications required for entry into the SES."  2020 Desk Guide § 3-18, ECF No. 58-1 at 14; *see also* Trial Tr. at 40:20–25 (June 6).

But the 2020 version of the Desk Guide was not in effect when the Secretary denied Bitner's application in October 2019; at that time, the 2017 version controlled.  Compl. ¶ 24 (providing date of non-selection).  The Secretary quickly realized this at trial, and objected on relevance grounds.  Trial Tr. at 116:20–23 (June 4).  In response, Bitner's counsel said that the document varies little "from publication to publication," but had no other response to the relevance objection.  *Id.* at 117:7–12.  So the Court sustained the objection.  *Id.* at 118:10–13.  And in hindsight, this was proper.  The 2020 version could not make any fact surrounding Bitner's 2019 non-selection "more or less probable."  Fed. R. Evid. 401(a).

9

Yet Bitner urged the Court to reconsider its ruling because the Secretary "listed no objection" to the 2020 version in his pretrial statement. Trial Tr. at 118:19–20 (June 4). And Bitner reiterates this argument in her new trial motion. *See* Pl.'s Mot. at 7. But the Secretary's silence did not waive his ability to object on relevance grounds. In fact, the Federal Rules of Civil Procedure state that a party cannot waive a relevance objection by failing to assert it before trial. Fed. R. Civ. P. 26(a)(3)(B) (stating a pretrial "objection not so made—*except* for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause" (emphasis added)). So Bitner is clearly wrong in her suggestion that the failure to object to the OPM Desk Guide forever forfeited the Secretary's right to object later. And even if this was not properly a Rule 402 or 403 objection, the Court would have excused the omission because the Secretary's failure to note the publication date on one of Bitner's documents would have been an excusable oversight justifying a good cause exception. What is harder to understand—or excuse—is Bitner's counsel's failure to use the correct version of a document she claims was so "significant" to her case.

Even so, the Court allowed Bitner to substitute the controlling 2017 version in place of the irrelevant 2020 version. Trial Tr. at 116:18–118:21 (June 4) (excluding the 2020 version); *id.* at 124:4–18 (allowing the 2017 version because the defense "indicated to [Bitner] that they did not object"). Bitner's counsel said: "I appreciate that, your Honor. We'll do it." *Id.* at 124:17–18. Then the Court formally admitted the 2017 version based on counsel's representation that the version counsel previewed for the jury "is substantially identical to the [one] that would have been in place at the time." *Id.* at 127:23–128:3.

As it turned out, the two versions did not contain "exactly the same language." *Id.* at 127:6–9 (quoting Bitner's counsel). Unlike the 2020 version, the 2017 version omits language

prohibiting the use of details to credential non-SES employees for SES service. *See* Pl.'s Tr. Ex. 16 (2017 Desk Guide). Astonishingly, after the jury already began its deliberations, Bitner's counsel tried to submit "a different document" than the "March 2017 SES desk guide" that the Court admitted. Trial Tr. at 65:18–23 (June 6). The document Bitner proposed was "not dated 2017," and nobody was quite "sure where Plaintiff found this document." *Id.*

But by this point, Bitner's counsel had already based a portion of his closing argument off language from the 2020 version. *Id.* at 39:6–24. So the Court gave a curative jury instruction, stating that the Court struck the 2020 version from evidence and replaced it with "[t]he correct senior executive service desk guide." *Id.* at 76:1–12. The Court further told the jury that it "may not consider any language from the guide that Plaintiff's counsel showed you in his closing that is not in the Exhibit 16 that is being provided to you." *Id.* at 76:14–17. Bitner's counsel had ample notice—and multiple opportunities—to swap the irrelevant exhibit out for the right one. So his reference to the wrong one in closing arguments warranted this instruction.

Bitner now argues that the 2020 version should have been allowed anyway because it discusses laws and regulations that were in effect at the time of the non-selection. Pl.'s Mot. at 7–8. But those laws and regulations—unlike the 2020 version of the Desk Guide—do not prohibit the use of details for credentialing non-SES employees. *See generally* 5 U.S.C. § 3341; 5 C.F.R. § 317.903.

In sum, the 2020 version of the Desk Guide was irrelevant. So the Court properly excluded it.

*Second*, the gender demographic statistics. Bitner's arguments on this issue rehash arguments she made—and the Court rejected—in her opposition to the Secretary's motion in limine. *Compare* Pl.'s Opp'n to Def.'s Mot. Limine at 4–5, ECF No. 37, *with* Pl.'s Mot. at 9–11.

Because "Rule 59 is not a vehicle for relitigating old issues," the Court summarily rejects Bitner's attempt to take "a second bite at the apple." *Queen*, 310 F.R.D. at 21 (cleaned up); *see also* Pretrial Conf. Tr. at 2:18–5:24 (oral ruling excluding "the overall gender breakdown at the agency" because it was irrelevant and unfairly prejudicial).

Even if the Court considered Bitner's argument anew, it would still find it unpersuasive. Raymond Martinez made the decision to hire Kelly over Bitner. *See* Trial Tr. at 45:24–46:1 (June 5). But the agency-wide statistics Bitner wished to introduce captured individuals who were hired by "different decision-makers, different departments, and different hiring processes," making those statistics irrelevant. *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000) ("[W]e do not find any merit to Palmer's argument that the district court abused its discretion in excluding evidence of the existence of other lawsuits against the University System.").

The statistics would also have been unfairly prejudicial to the Secretary because they did not come with "evidence about the makeup of the candidate pool" for the position she wanted. *Barnes-Staples v. Carnahan*, 88 F.4th 712, 719 (7th Cir. 2023); *accord Lamphere v. Brown Univ.*, 685 F.2d 743, 750 (1st Cir. 1982) ("[T]he numerical disparity between men and women at particular job levels at Brown by itself is not probative. [The statistics] may simply reflect an absence of qualified female applicants[.]").

*Finally*, Bitner suggests that the Court excluded evidence of her prior non-selections for senior FMCSA positions. *See* Pl.'s Mot. at 10. Not so. On direct examination, Bitner's counsel asked her: "So had you previously applied for SES positions?" Trial Tr. at 195:3 (June 5). To which Bitner responded:

> Yes. This was my third time that I have applied for an SES position at Federal Motor Carrier Safety Administration. And each of those three times it came down

> to myself and another candidate.  The other candidate was male, and this was the third time that the male candidate was selected.  And this happened over a period of years.

*Id.* at 195:4–9.  The Court did not strike or otherwise exclude this testimony.  So Bitner is simply mistaken.

## IV.

For these reasons, it is hereby

**ORDERED** that Plaintiff's [58] Motion for New Trial is DENIED.

**SO ORDERED**.

Dated: September 18, 2024                                             TREVOR N. McFADDEN, U.S.D.J.